**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUSTIN M GUZMAN,<br>Plaintiff<br><br>v.<br><br>CLARENDALE OF ALGONQUIN, LIFE CARE SERVICES COMMUNITY EMPLOYMENT LLC,<br>Defendant | No. 22 CV 1072<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant LCS Community Employment LLC's ("LCE")[1] motion for summary judgment on Plaintiff Justin Guzman's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act (ADA). (*See generally* R. 114); 42 U.S.C. §§ 2000e, *et seq.*, 12117. The defendant asserts it is entitled to summary judgment because (1) the plaintiff cannot show disability discrimination under the ADA or sex and sexual orientation discrimination under Title VII; (2) he cannot prove that he was subject to a hostile work environment; and (3) he fails to prove retaliation under Title VII or the ADA. (*See generally id.*) For the reasons that follow, the motion is granted.

[1] The plaintiff named "Clarendale of Algonquin, Life Care Services Community Employment LLC" as the defendant. The defendant clarified that its handbook labels "LCS Community Employment, LLC" as the plaintiff's employer. (R. 115-1 at 6.) The Court adopts the latter in referring to the defendant in the absence of any evidence to the contrary.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions,[2] the materials cited therein, and other aspects of the record in this case.

### I. THE PLAINTIFF'S EMPLOYMENT

The defendant staffs senior living facilities within its network and employs the individuals who work at those facilities. (Pl. Resp. to Def. SOF ¶ 1.)[3] Clarendale of Algonquin ("Clarendale") is one of these senior living facilities and provides independent living, assisted living, and memory care facilities in Algonquin, Illinois. (*Id.* ¶¶ 2–3.) The defendant hired the plaintiff on August 26, 2020, as a part-time dishwasher with the title "Utility Technician." (*Id.* ¶¶ 4–5.) In this role, he maintained cleanliness in the kitchen, dish service area, and storage areas, and he washed and organized kitchen supplies. (*Id.* ¶ 6.) The plaintiff is a gay man and suffers from hearing loss and post-traumatic stress disorder (PTSD). (R. 114 at 7; Def. Resp. to Pl. SOF ¶ 3.) Mike Prager, Clarendale's Director of Culinary Services, led the plaintiff's team and was the plaintiff's direct supervisor. (Pl. Resp. to Def. SOF ¶ 9.)

### II. APRIL 2021 COMPLAINT

Beginning in March 2021, the plaintiff repeatedly arrived late to work or missed work without advance notice. (*Id.* ¶ 10.) On April 2, 2021, the defendant issued

[2] Defendant's Statement of Undisputed Material Facts ("Def. SOF") (R. 115); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl. Resp. to Def. SOF") (R. 123); Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1(B)(3)(c) ("Pl. SOF") (R. 122); Defendant's Response to Plaintiff's Statement of Additional Facts ("Def. Resp. to Pl. SOF") (R. 128.)

[3] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

the plaintiff an Educational Opportunity Notice (EON) that detailed twenty instances in one month when the plaintiff was late or absent, which the plaintiff admits. (*Id.* ¶¶ 11–12.) On April 23, 2021, the plaintiff complained to LCE Business Office Manager Linda Butts and Executive Director Peter Franken regarding his coworkers. (*Id.* ¶ 14.) When Butts and Franken interviewed the plaintiff, he alleged that unidentified employees made comments about the plaintiff's liking "older guys," called the plaintiff a "pizza face" (after which Prager did not intervene), gave him looks of pity and talked behind his back. (*Id.* ¶ 15.) He also alleged that Prager told people that the plaintiff was raped and that Prager gave him a "hard time" about a two-week vacation request. (*Id.*)

Butts and Franken began to investigate. (*Id.* ¶ 16.) The plaintiff alleged that he told Prager he was raped in a text he sent to Prager eleven days prior, in which he said, "Just wanted to let you know that I can't show up to work on this Wednesday [April 14]. I have to virtually show up to the court to testify in California for rape and assault charges . . . . Thank you for understanding. See you on this Friday." (*Id.* ¶ 17.) The plaintiff did not tell Butts or Franken that Prager ever referenced the plaintiff's disability or sexual orientation. (*Id.* ¶ 18.)

Butts and Franken interviewed Prager. (*Id.* ¶ 19.) In the interview, Prager told them that he told Melissa Ayala, a coworker, that the plaintiff had needed time off for jury duty but could still work his scheduled shift. (*Id.* ¶ 20.) The plaintiff has clarified that the day off was to testify, not for jury duty. (Def. Resp. to Pl. SOF ¶¶ 5–6.) Prager said he did not speak to anyone else about the request for a day off. (Pl.

Resp. to Def. SOF ¶ 21.) He also responded to the plaintiff's text, telling him that it was fine to miss work on April 14 and that he would be paid if he presented his jury duty summons. (*Id.* ¶ 22.) When Butts and Franken spoke to Ayala, she said Prager just told her that the plaintiff needed time off for court but provided no other details. (*Id.* ¶ 23.)

As to his vacation request, the plaintiff said that Prager was "asking too many questions," which made him "nervous" and caused him to "change his vacation plans to less days." (*Id.* ¶ 24.) Again, however, the plaintiff did not state that Prager took issue with the plaintiff's disability or sexual orientation. (*Id.* ¶ 25.) Prager told Butts and Franken that he had told the plaintiff that two weeks off would be difficult to accommodate due to short-staffing but approved one week and two extra days off. (*Id.* ¶¶ 26–28.) The plaintiff also alleges that he told Butts and Franken that his coworkers gossiped about his sexual orientation, Prager did not intervene, and a female coworker tried to surreptitiously take a photo with the plaintiff in the background. (*Id.* ¶ 29.) Prager denied engaging in name-calling and said he had not received reports of employees taking photos or videos. (*Id.* ¶ 30.)

On April 28, 2021, Franken reported to the Crystal Lake Police Department that the plaintiff made comments suggesting suicide in the workplace and requested a wellbeing check on the plaintiff. (R. 122-7 at 10.) Early in the morning on April 29, 2021, the police spoke with the plaintiff, who said he had been depressed because he had been bullied at work and showed an injury on his left arm, which he says was

self-harm. (*Id.* at 9.) The police sent the plaintiff with Crystal Lake Rescue to receive a mental health evaluation and closed the case. (*Id.*)

### III. May 2021 Complaint

On May 10, 2021, the plaintiff did not appear for his shift and did not notify anyone at LCE that he would be absent. (Pl. Resp. to Def. SOF ¶ 32.) Two days later, LCE issued a Behavioral Change Notice (BCN) to the plaintiff but chose not to terminate his employment at that time. (*Id.* ¶¶ 33–34.) On May 17, 2021, the plaintiff submitted a report to Butts in which he made allegations about Prager and other employees. (*Id.* ¶ 36.) The allegations included: Prager's sexual relationship with an underage LCE employee and giving her a ride home; Prager starting rumors about the plaintiff's admission of being a rape survivor and having PTSD and depression; and Prager and other employees gossiping about the plaintiff liking older men and taking photos of him secretly. (*Id.* ¶¶ 37–41.) He also criticized the human resources team, claiming that they failed to provide him with an American Sign Language (ASL) interpreter during an April meeting and that Butts laughed and rolled her eyes during that meeting. (*Id.* ¶¶ 42, 46.) The plaintiff asked for an ASL interpreter during the April meeting; while one could not be provided to him on the spot arrangements could be made to provide one at future meetings. (*Id.* ¶ 43–45.)

LCE again fully investigated the plaintiff's allegations. (*Id.* ¶ 47.) Butts and Human Resources Manager Rachael Sorci-Hodges conducted two follow-up meetings to discuss and arranged for ASL interpreters for both meetings. (*Id.* ¶¶ 48–49.) Butts also spoke with ten servers who worked with the plaintiff, and all told Butts that they had not heard anyone at LCE gossip about or make fun of the plaintiff. (*Id.* ¶ 51.)

After one of these meetings, on May 18, 2021, the plaintiff went home for the day without informing his manager, even though he was scheduled to work that day. (*Id.* ¶¶ 53–54.) LCE issued another BCN to the plaintiff, which was the third disciplinary notice he had received in approximately one-and-a-half months. (*Id.* ¶ 55.)

In his May 19, 2021, meeting with Butts, the plaintiff repeated his previous allegations. (*Id.* ¶ 56.) In the following meeting, on May 28, 2021, the plaintiff named more servers who he said called him names, and from June 2, 2021, through July 2, 2021, the plaintiff made five more complaints on the same subjects and with the same gossip and name-calling issues as before to Butts. (*Id.* ¶¶ 57–59.) LCE continued to investigate and claimed to find no evidence supporting these claims. (*Id.* ¶ 60.) When LCE asked the plaintiff for further details on who specifically was targeting him or making comments, the plaintiff responded "every single server," to include individuals who were not working the days he claimed comments were made. (*Id.* ¶¶ 62, 64–65.)

On May 24, 2021, the plaintiff made a report to the Algonquin Police Department alleging that Prager had a sexual relationship with an allegedly minor woman coworker. (R. 122-7 at 25–27.) In this report, he stated that he overheard two of his coworkers talking about Prager and the underage employee having sex and Prager driving her home. (*Id.*) The plaintiff also said that other employees were bullying him and that he thought about committing suicide the previous month but advised that he no longer felt that way. (*Id.*) The police followed up with Franken on June 4, 2021, who said that he was aware of the allegations and said that the plaintiff

had made other unfounded complaints about various employees and pointed out inconsistencies in the plaintiff's allegations. (*Id.* at 25.) The police declined to investigate further and closed the case. (*Id.*)

During discovery in this case, the plaintiff produced lengthy audio recordings he made while working in the kitchen on July 9 and 10, 2021, which he testified were "[f]ull of insults" and "negative comments" about him. (Pl. Resp. to Def. SOF ¶ 67.) During his deposition, he could not identify any discriminatory or harassing remarks from the recordings. (*Id.* ¶ 68.)

## IV. The Plaintiff's Termination

On June 28, 2021, the plaintiff caused garbage to spill on the floor. (*Id.* ¶ 70.) When he was asked to clean it, he refused and left before the end of his shift without informing his supervisor. (*Id.*) Throughout July 2021, the plaintiff provided over twenty pages of allegations of mistreatment and rumor-spreading by Prager and other LCE servers. (*Id.* ¶ 71.) Based on the administrative burden of processing the plaintiff's complaints and the perceived strife they created in the workplace, LCE terminated the plaintiff's employment on July 14, 2021, with Butts and Franken as primary decisionmakers. (*Id.* ¶¶ 72–74.) The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on August 2, 2021. (*Id.* ¶ 77.) The EEOC issued the plaintiff a right-to-sue letter on December 9, 2021. (R. 122-1 at 3.)

On October 22, 2021, the plaintiff made a report to the Algonquin police alleging that he had been a victim of a hate crime due to his coworkers allegedly bullying and cyberbullying him due to his sexual orientation and disability. (R. 122-

7 at 31.) He said that he inflicted self-harm due to the bullying and also that he was injured when a coworker bumped shoulders with him in the kitchen. (*Id.*) When asked why he did not report this earlier, the plaintiff said he was not in the right frame of mind and did not realize he had experienced a hate crime at the time of the incident. (*Id.*) The police advised the plaintiff to speak with human resources or an attorney, as that conduct did not constitute a criminal matter, and closed the case. (*Id.*)

### V. THIS CASE

The plaintiff filed this lawsuit on March 1, 2022. (*See* R. 1.) He amended his complaint on March 25, 2022, alleging violations of Title VII and the ADA—specifically, that the plaintiff was wrongfully terminated, LCE failed to reasonably accommodate the plaintiff's disabilities, failed to stop harassment against him, and retaliated against him for asserting protected rights. (*See generally* R. 9.)

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court draws all inferences in the light most favorable to the nonmoving party. *Id.* at 255. However, the nonmoving party cannot rely on mere conjecture or speculation to manufacture a genuine issue of material fact. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

## ANALYSIS

### I. DISCRIMINATION

LCE first moves for summary judgment on the plaintiff's claims for sexual orientation discrimination under Title VII and disability discrimination under the ADA. (*See* R. 114 at 16–17.) Under the most commonly used method of proof for Title VII and ADA discrimination claims, a plaintiff establishes a *prima facie* showing of discrimination by showing that (1) he is a member of a protected class; (2) his job performance met the defendant's legitimate job expectations; (3) the plaintiff was subjected to adverse employment action; and (4) the defendant treated a similarly situated individual not in the protected class more favorably. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (Title VII) (citing *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1104 n.1 (7th Cir. 2012)); *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014) (ADA). If the plaintiff can make a *prima facie* case of discrimination, the burden shifts to the employer to provide a legitimate and non-discriminatory reason for its actions. *Bunn*, 753 F.3d at 685. If the employer does so, then the plaintiff must provide evidence that the stated reason is pretextual. *Id.* It is undisputed that the plaintiff, who is gay and hard of hearing, is a member of a protected class under both statutes. (Def. Resp. to Pl. SOF ¶ 3; R. 122-7 at 6.) He was also terminated from his employment. (Pl. Resp. to Def. SOF ¶ 74.)

The question, then, is whether he was meeting LCE's legitimate job expectations and whether LCE treated a similarly situated individual differently. "[I]n determining whether an employee was meeting legitimate employment

expectations, the court evaluates 'the employee's job performance through the eyes of [the employee's] supervisors at the time of' the employee's suspension and discharge." *Kralka v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 75 F. Supp. 3d 909, 914 (N.D. Ill. 2014) (citing *Gates v. Caterpillar,* 513 F.3d 680, 689 (7th Cir. 2008)). The parties do not dispute that the plaintiff received multiple EONs and BCNs, frequently left his job without providing notice or showed up late or not at all, and at times refused to complete his job duties. (Pl. Resp. to Def. SOF ¶¶ 10–12, 32–33, 54, 70.) The plaintiff does not attempt to contradict these facts but instead argues that he experienced a hostile work environment based on discrimination from his coworkers. (R. 121 at 8–9.) Whether he experienced a hostile work environment does not bear on his meeting LCE's job expectations to not be late or absent from work or complete his assigned duties. (R. 114 at 18.) No reasonable jury could find that the plaintiff was meeting LCE's legitimate expectations.

The plaintiff also fails to identify a similarly situated individual who was treated differently than him. He does not point to a non-disabled or non-gay employee who was constantly late to or absent from work or did not complete their duties who was not subject to termination, let alone who received any favorable treatment as compared to him. Therefore, no reasonable jury could find that a similarly situated individual was treated more favorably than the plaintiff.

Finally, the plaintiff cannot point to any evidence of pretext in LCE's stated reasons for terminating his employment. LCE points to the plaintiff's performance, as well as the numerous, allegedly baseless complaints lodged by the plaintiff as their

reasons for termination. (R. 114 at 21.) The plaintiff does not dispute that his performance was poor. And to the extent he argues that the complaints he made had merit, he fails to produce any evidence that Prager and his coworkers were engaged in discriminatory bullying or harassment against him to counteract LCE's evidence to the contrary. Simply stating that LCE lied is conclusory and does not constitute proof sufficient to create a genuine dispute of material fact. Without any evidence to support his claim for discrimination or pretext, the Court concludes there is no genuine dispute of material fact and grants LCE's motion for summary judgment as to the claims of discrimination under Title VII and the ADA.

## II. HOSTILE WORK ENVIRONMENT

LCE next argues that the plaintiff's claims for a hostile work environment must fail. (R. 114 at 22.) "To state a Title VII hostile work environment claim, a plaintiff must allege (1) [he] was subject to unwelcome harassment; (2) the harassment was based on [his] national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015) (citing *Cooper–Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)). LCE argues that the plaintiff fails to show that he was harassed based on a protected characteristic, that the harassment was severe or pervasive, and that there is a basis for employer liability. (R. 114 at 22.)

The plaintiff's evidence of harassment consists of notes from his meetings with Butts and Franken that state that coworkers would say that the plaintiff "like[s] older guys," he is a "pizza face," that the plaintiff "was raped," coworkers would take "a selfie with [him] in the background," and that he could "hear people gossiping behind [his] back." (R. 115-6 at 2.) The only incident that relates to a protected characteristic is that he likes older men. *See Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560–62 (7th Cir. 2019) (bifurcating the evaluation of a series of hostile comments by those related to a protected characteristic and those unconnected to the protected characteristic). But the plaintiff has not presented evidence to show that the comment regarding his liking older men was severe or pervasive such that it "altered the conditions of his employment." *Huri*, 804 F.3d at 834. One comment tied to his sexuality out of several comments made at him, without an indication of the number of times such a comment was made and over what time period, does not suffice to show that the plaintiff suffered severe or pervasive harassment. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment.")

The plaintiff has also not shown that there is a basis for employer liability. "An employer is liable for a hostile work environment claim if the plaintiff's supervisor created the hostile work environment, or if a co-worker created the hostile work environment and the employer was 'negligent either in discovering or remedying the harassment.'" *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006) (citing

*Mason v. S. Ill. Univ.*, 233 F.3d 1036, 1043 (7th Cir. 2000)). Here, LCE presents evidence that it investigated each of the plaintiff's complaints against Prager and the plaintiff's coworkers through interviews and written statements, did so promptly after the complaints were made, and found that all were baseless. *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011), *aff'd*, 570 U.S. 421 (2013) (internal citations omitted) ("As we have said before, prompt investigation is the hallmark of reasonable corrective action."). The Seventh Circuit has held that, "on the issue of employer liability, . . . we must look at the employer's response in light of the facts it found in its investigation." *Id.* at 472. The plaintiff does not provide evidence to dispute the sufficiency of LCE's investigations except to state, without citation to competent evidence, that Prager and his coworkers lied when interviewed about the complaints. (*See* Def. Resp. to Pl. SOF ¶¶ 4, 14.) This is not sufficient evidence of pretext in LCE's investigation. Accordingly, the Court grants LCE's motion for summary judgment as to the plaintiff's claims of a hostile work environment.

## III. Retaliation

Finally, LCE argues that the plaintiff fails to establish retaliation. To do so, a plaintiff must show that he engaged in statutorily protected activity, suffered an adverse action, and the protected activity caused the adverse action. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008) (Title VII retaliation elements); *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (ADA retaliation elements). Here, LCE argues that the plaintiff fails to show that he engaged in a statutorily protected activity or that the activity caused his termination. (R. 114 at 26.)

The Court need not address LCE's arguments regarding whether the plaintiff had a good-faith basis for making his complaints such that they constituted statutorily protected activity. The Court finds, instead, that the plaintiff cannot demonstrate that his complaints were the cause of his termination. The plaintiff must present evidence that not only were his complaints one cause of his termination, but that his termination would not have happened without the complaints. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."); *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (holding that for an ADA retaliation claim, there must be "a but for causal connection" between the statutorily protected activity and adverse employment action). The plaintiff has not done so. Notably, he does not dispute any of the evidence regarding his attendance and behavioral problems in the workplace. (*See* Pl. Resp. to Def. SOF ¶¶ 10–12, 32–33, 54, 70.) With no evidence to dispute such assertions, the Court finds that the plaintiff cannot establish retaliation under the ADA or Title VII and grants LCE's motion for summary judgment as to those claims.

## CONCLUSION

For the reasons articulated in this Order, the defendant's motion for summary judgment [114] is granted. Civil case terminated.

Date: September 2, 2026

JEREMY C. DANIEL
United States District Judge